# DANIELS v. UNITED STATES

No. 99–9136. Argued January 8, 2001—Decided April 25, 2001

*G. Michael Tanaka* argued the cause for petitioner. With him on the briefs was *Maria E. Stratton.*

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the brief were *Solicitor*

General Waxman, Assistant Attorney General Robinson, James A. Feldman, and Kathleen A. Felton.*

JUSTICE O'CONNOR delivered the opinion of the Court in part.

In *Custis* v. *United States*, 511 U. S. 485 (1994), we addressed whether a defendant sentenced under the Armed Career Criminal Act of 1984 (ACCA), 18 U. S. C. § 924(e), could collaterally attack the validity of previous state convictions used to enhance his federal sentence. We held that, with the sole exception of convictions obtained in violation of the right to counsel, a defendant has no right to bring such a challenge in his federal sentencing proceeding. 511 U. S., at 487. We now consider whether, after the sentencing proceeding has concluded, the individual who was sentenced may challenge his federal sentence through a motion under 28 U. S. C. § 2255 (1994 ed., Supp. V) on the ground that his prior convictions were unconstitutionally obtained. We hold that, as a general rule, he may not. There may be rare circumstances in which § 2255 would be available, but we need not address the issue here.

I

In 1994, petitioner Earthy D. Daniels, Jr., was tried and convicted of being a felon in possession of a firearm in violation of 18 U. S. C. § 922(g)(1). The Government then sought to enhance his sentence under the ACCA. App. 4–5. The ACCA imposes a mandatory minimum 15-year sentence on anyone who violates § 922(g)(1) and who has three previous convictions for a violent felony or a serious drug offense. § 924(e)(1). Petitioner had been convicted in California in 1978 and 1981 for robbery, and in 1977 and 1979 for first degree burglary. *Id.*, at 14. The District Court found petitioner to be an armed career criminal within the meaning of

---

*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance.

the ACCA and, after granting a downward departure, the District Court sentenced petitioner to 176 months. *Id.*, at 14, 18. Had petitioner not been adjudged an armed career criminal, he would have received at most a 120-month sentence. 18 U. S. C. § 924(a)(2). On direct appeal, petitioner argued unsuccessfully that his two burglary convictions did not qualify as predicate offenses under the ACCA. See 86 F. 3d 1164 (CA9 1996) (table).

Petitioner then filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U. S. C. § 2255 in the United States District Court for the Central District of California. Section 2255, a postconviction remedy for federal prisoners, permits "[a] prisoner in custody under sentence of a [federal] court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." Petitioner asserted that his current federal sentence was imposed in violation of the Constitution because it was based in part on his 1978 and 1981 robbery convictions. Those prior convictions, he alleged, were themselves unconstitutional because they both were based on guilty pleas that were not knowing and voluntary, and because the 1981 conviction was also the product of ineffective assistance of counsel. App. 51–52. He did not contend that § 2255 relief was appropriate because his current sentence was imposed in violation of the ACCA. Cf. Brief for Petitioner 13.

The District Court denied the § 2255 motion, App. 58–67, and a panel of the Ninth Circuit Court of Appeals affirmed, 195 F. 3d 501 (1999). The court held that our decision in *Custis* "bar[s] federal habeas review of the validity of a prior conviction used for federal sentencing enhancement unless the petitioner raises a . . . claim [under *Gideon* v. *Wainwright*, 372 U. S. 335 (1963)]." 195 F. 3d, at 503 (internal quotation marks and citation omitted). Because the Courts of Appeals are divided as to whether *Custis* bars relief under

§ 2255 as well as in federal sentencing proceedings, we granted certiorari. 530 U. S. 1299 (2000).

## II

The petitioner in *Custis* attempted, during his federal sentencing proceeding, to attack prior state convictions used to enhance his sentence under the ACCA. Like petitioner here, Custis challenged his prior convictions as the product of allegedly faulty guilty pleas and ineffective assistance of counsel. 511 U. S., at 488. We held that with the sole exception of convictions obtained in violation of the right to counsel, Custis had no right under the ACCA or the Constitution "to collaterally attack prior convictions" in the course of his federal sentencing proceeding. *Id.,* at 490–497. While the "failure to appoint counsel for an indigent defendant was a unique constitutional defect" that justified the exception for challenges concerning *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), 511 U. S., at 496, challenges of the type Custis sought to bring did not "ris[e] to the level of a jurisdictional defect," *ibid.*

Two considerations supported our constitutional conclusion in *Custis:* ease of administration and the interest in promoting the finality of judgments. With respect to the former, we noted that resolving non-*Gideon*-type constitutional attacks on prior convictions "would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records." 511 U. S., at 496. With respect to the latter, we observed that allowing collateral attacks would "inevitably delay and impair the orderly administration of justice" and "deprive the state-court judgment of its normal force and effect." *Id.,* at 497 (internal quotation marks and brackets omitted).

## A

Petitioner contends that the *Custis* rule should not extend to § 2255 proceedings because the concerns we articulated

in *Custis* are not present in the § 2255 context. Brief for Petitioner 22–26. We disagree. First, a district court evaluating a § 2255 motion is as unlikely as a district court engaged in sentencing to have the documents necessary to evaluate claims arising from long-past proceedings in a different jurisdiction. While petitioner is quite right that federal district courts are capable of evaluating fact-intensive constitutional claims raised by way of a habeas petition, *id.*, at 22–23, institutional competence does not make decades-old state court records and transcripts any easier to locate.

The facts of this case only reinforce our concern. For example, petitioner contends that he entered his 1978 and 1981 guilty pleas without a full understanding of the essential elements of the crimes with which he was charged, and therefore the resulting convictions violated due process. App. 40–42, 50–51. These claims by their nature require close scrutiny of the record below. Yet petitioner has not placed the transcript from either plea colloquy in the record. In fact, he has admitted that the 1978 transcript is missing from the state court file. Cf. *id.*, at 38, n. 3. Under these circumstances, it would be an almost futile exercise for a district court to attempt to determine accurately what was communicated to petitioner more than two decades ago.

With respect to the concern for finality, petitioner argues that because he has served the complete sentences for his 1978 and 1981 convictions, the State would suffer little, if any, prejudice if those convictions were invalidated through a collateral challenge under § 2255. Brief for Petitioner 24–26. To the contrary, even after a defendant has served the full measure of his sentence, a State retains a strong interest in preserving the convictions it has obtained. States impose a wide range of disabilities on those who have been convicted of crimes, even after their release. For example, in California, where petitioner committed his crimes, persons convicted of a felony may be disqualified from holding public office, subjected to restrictions on professional licensing, and

barred from possessing firearms. See U. S. Dept. of Justice, Office of the Pardon Attorney, Civil Disabilities of Convicted Felons: A State-By-State Survey 29–32 (Oct. 1996). Further, each of the 50 States has a statute authorizing enhanced sentences for recidivist offenders. *E. g.,* Cal. Penal Code Ann. §667 (West 1999). See also *Parke* v. *Raley,* 506 U. S. 20, 26–27 (1992).

At oral argument, petitioner suggested that invalidating a prior conviction on constitutional grounds for purposes of its use under the ACCA would have no effect beyond the federal proceeding. Tr. of Oral Arg. 8–10. Although that question is not squarely presented here, if a state conviction were determined to be sufficiently unreliable that it could not be used to enhance a federal sentence, the State's ability to use that judgment subsequently for its own purposes would be, at the very least, greatly undermined. Thus, the State does have a real and continuing interest in the integrity of its judgments.

B

On the most fundamental level, petitioner attempts to distinguish *Custis* as a decision only about the appropriate forum in which a defendant may challenge prior convictions used to enhance a federal sentence. The issue in *Custis,* according to petitioner, was " 'where, not whether, the defendant could attack a prior conviction for constitutional infirmity.' " Brief for Petitioner 14 (quoting *Nichols* v. *United States,* 511 U. S. 738, 765 (1994) (GINSBURG, J., dissenting) (original emphasis deleted)). The appropriate forum for such a challenge, petitioner argues, at least where no other forum is available, is a federal proceeding under §2255. Brief for Petitioner 16.

The premise underlying petitioner's argument—that defendants may challenge their convictions for constitutional infirmity—is quite correct. It is beyond dispute that convictions must be obtained in a manner that comports with the Federal Constitution. But it does not necessarily follow

that a § 2255 motion is an appropriate vehicle for determining whether a conviction later used to enhance a federal sentence was unconstitutionally obtained.

Our system affords a defendant convicted in state court numerous opportunities to challenge the constitutionality of his conviction. He may raise constitutional claims on direct appeal, in postconviction proceedings available under state law, and in a petition for a writ of habeas corpus brought pursuant to 28 U. S. C. § 2254 (1994 ed. and Supp. V). See generally 1 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 5.1.a (3d ed. 1998).[1] These vehicles for review, however, are not available indefinitely and without limitation. Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim. See, e. g., United States v. Olano, 507 U. S. 725, 731 (1993) (" 'No procedural principle is more familiar to this Court than that a constitutional right . . . may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' " (quoting Yakus v. United States, 321 U. S. 414, 444 (1944))). One of the principles vindicated by these limitations is a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." Parke, supra, at 29.

---

[1] JUSTICE SOUTER is concerned that a defendant may forgo "direct challenge because the penalty was not practically worth challenging, and . . . collateral attack because he had no counsel to speak for him." Post, at 391 (dissenting opinion). Whatever incentives may exist at the time of conviction, the fact remains that avenues of redress are generally available if sought in a timely manner. If a person chooses not to pursue those remedies, he does so with the knowledge that the conviction will stay on his record. This knowledge should serve as an incentive not to commit a subsequent crime and risk having the sentence for that crime enhanced under a recidivist sentencing statute.

Thus, we have held that if, by the time of sentencing under the ACCA, a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence. See *Custis*, 511 U. S., at 497. This rule is subject to only one exception: If an enhanced federal sentence will be based in part on a prior conviction obtained in violation of the right to counsel, the defendant may challenge the validity of his prior conviction during his federal sentencing proceedings. *Id.*, at 496. No other constitutional challenge to a prior conviction may be raised in the sentencing forum. *Id.*, at 497.

After an enhanced federal sentence has been imposed pursuant to the ACCA, the person sentenced may pursue any channels of direct or collateral review still available to challenge his prior conviction. In *Custis*, we noted the possibility that the petitioner there, who was still in custody on his prior convictions, could "attack his state sentences [in state court] or through federal habeas review." *Ibid.* If any such challenge to the underlying conviction is successful, the defendant may then apply for reopening of his federal sentence. As in *Custis*, we express no opinion on the appropriate disposition of such an application. Cf. *ibid.*

If, however, a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under §2255. A defendant may challenge a prior conviction as the product of a *Gideon* violation in a §2255 motion, but generally only if he raised that claim at his federal sentencing proceeding. See *United States* v. *Frady*, 456 U. S. 152, 167–168 (1982) (holding that procedural default rules developed in the habeas corpus context apply

in § 2255 cases); see also *Reed* v. *Farley,* 512 U. S. 339, 354–355 (1994).

JUSTICE SOUTER says that our holding here "rul[es] out the application of § 2255 when the choice is relief under § 2255 or no relief at all." *Post,* at 390 (dissenting opinion). This all-or-nothing characterization of the problem misses the point. As we have said, a defendant generally has ample opportunity to obtain constitutional review of a state conviction. *Supra,* at 381. But once the "door" to such review "has been closed," *post,* at 388, by the defendant *himself*—either because he failed to pursue otherwise available remedies or because he failed to prove a constitutional violation—the conviction becomes final and the defendant is not entitled to another bite at the apple simply because that conviction is later used to enhance another sentence.

To be sure, the text of § 2255 is broad enough to cover a claim that an enhanced federal sentence violates due process. See *ibid.* See also n. 2, *infra.* But when such a due process claim is predicated on the consideration at sentencing of a fully expired prior conviction, we think that the goals of easy administration and finality have ample "horsepower" to justify foreclosing relief under § 2255. Were we to allow defendants sentenced under the ACCA to collaterally attack prior convictions through a § 2255 motion, we would effectively permit challenges far too stale to be brought in their own right, and sanction an end run around statutes of limitations and other procedural barriers that would preclude the movant from attacking the prior conviction directly. Nothing in the Constitution or our precedent requires such a result.

## C

We recognize that there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own. The circumstances of this case do not require us to determine whether a defendant could use a motion under § 2255 to chal-

lenge a federal sentence based on such a conviction.[2] Cf., *e. g.*, 28 U. S. C. § 2255 (1994 ed., Supp. V) (allowing a second or successive § 2255 motion if there is "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense"); *ibid.* (tolling 1-year limitation period while movant is prevented from making a § 2255 motion by an "impediment . . . created by governmental action in violation of the Constitution or laws of the United States").

### III

No such claim is made here. The sole basis on which petitioner Daniels challenges his current federal sentence is that two of his prior state convictions were the products of inadequate guilty pleas and ineffective assistance of counsel. Petitioner could have pursued his claims while he was in custody on those convictions. As his counsel conceded at oral argument, there is no indication that petitioner did so or that he was prevented from doing so by some external force. Tr. of Oral Arg. 3–4, 6.

Petitioner's federal sentence was properly enhanced pursuant to the ACCA based on his four facially valid prior state convictions. Because petitioner failed to pursue remedies that were otherwise available to him to challenge his 1978 and 1981 convictions, he may not now use a § 2255 motion to collaterally attack those convictions. The judgment of the United States Court of Appeals for the Ninth Circuit is therefore affirmed.

*It is so ordered.*

---

[2] After comparing the text of §§ 2254 and 2255, JUSTICE SCALIA concludes that "Congress did not expect challenges to state convictions (used to enhance federal convictions) to be brought under § 2255." *Post,* at 386 (opinion concurring in part). This is, of course, true. But it is also beside the point, as the subject of the § 2255 motion in this circumstance is the enhanced federal sentence, not the prior state conviction.

JUSTICE SCALIA, concurring in part.

I agree with the Court that 28 U. S. C. § 2255 (1994 ed., Supp. V) does not (with the *Gideon* exception, see *Gideon* v. *Wainwright,* 372 U. S. 335 (1963)) permit inquiry into whether a conviction later used to enhance a federal sentence was unconstitutionally obtained, and I agree with the Court's reasoning so far as it goes. I have another reason for reaching that result, however, and one that prevents me from joining that portion of the Court's opinion which speculates that "[t]here may be rare circumstances in which § 2255 would be available," such as when "no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own," *ante,* at 376, 383. Simply put, "the text of § 2255 is" *not* "broad enough to cover a claim that an enhanced federal sentence violates due process," *ante,* at 383, if the enhancement is based on prior convictions.

In addition to the practical reasons JUSTICE O'CONNOR identifies as counseling against petitioner's interpretation of § 2255, there stands the very text of that provision. "[W]e have long recognized that 'the power to award the writ [of habeas corpus] by any of the courts of the United States, must be given by written law,'" *Felker* v. *Turpin,* 518 U. S. 651, 664 (1996), quoting *Ex parte Bollman,* 4 Cranch 75, 94 (1807). Section 2255 authorizes a challenge by "[a] prisoner in custody under *sentence of a court established by Act of Congress* claiming the right to be released upon the ground that *the sentence* was *imposed* in violation of the Constitution or laws of the United States." (Emphases added.) We have already determined, in *Custis* v. *United States,* 511 U. S. 485 (1994), that a sentencing court does not violate the Due Process Clause by imposing a sentence enhanced by prior, purportedly tainted, convictions, unless the taint is the result of a *Gideon* violation.* It follows ineluctably that

---

*JUSTICE SOUTER asserts that *Custis* "merely held (with [the] exception [of *Gideon* violations]) that neither the ACCA nor the Constitution provides a forum at the sentencing hearing for challenges to the underlying

§2255 does not establish any right to challenge federal sentences based on their enhancement by stale, non-*Gideon*-tainted, convictions.

This conclusion is reinforced (if reinforcement is possible) by comparing the text of §2255 with that of §2254. The latter, governing habeas challenges to state convictions, provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding arising under §2254." 28 U. S. C. §2254(i) (1994 ed., Supp. V). There is no conceivable reason why this bar would be placed upon challenges to state convictions under §2254, but not upon challenges to state convictions under §2255. Congress did not expect challenges to state convictions (used to enhance federal convictions) to be brought under §2255.

Perhaps precepts of fundamental fairness inherent in "due process" suggest that a forum to litigate challenges like petitioner's must be made available *somewhere* for the odd case in which the challenge could not have been brought earlier. But it would not follow from this that federal sentencing must provide the remedy; much less that federal sentencing need not provide the remedy but §2255 (which is entirely dependent upon the impropriety of prior federal sentencing)

---

conviction." *Post*, at 388, n. 1 (dissenting opinion). But the Constitution *would* "provide a forum" at the sentencing hearing if it were *unconstitutional* to sentence on the basis of invalid but nonetheless outstanding prior convictions. (Assuredly the Constitution does not permit unconstitutional acts.) *Custis* necessarily held, therefore, that it is not unconstitutional (with the *Gideon* exception) to sentence on the basis of invalid but nonetheless outstanding prior convictions. JUSTICE SOUTER apparently understood this at the time *Custis* was decided. His dissent began: "The Court answers a difficult constitutional question that I believe the underlying statute does not pose," 511 U. S., at 498, which question turns out to be "whether the Constitution permits courts to enhance a defendant's sentence on the basis of a prior conviction the defendant can show was obtained in violation of his right to effective assistance of counsel," *id.*, at 505.

must do so. Fundamental fairness could be achieved just as well—indeed, better—by holding that the rendering jurisdiction must provide a means for challenge when enhancement is threatened or has been imposed. Such a constitutional rule, combined with a rule that any sentence already imposed must be adjusted accordingly, would prevent sentencing hearings from being routinely complicated by inquiries into prior convictions, and would locate those inquiries where they can best be conducted: in the rendering jurisdiction. It would also avoid a possible gap in protection that would result from using § 2255 (and in state-court cases, § 2254) for this inappropriate purpose—arising from the fact that, as discussed above, § 2254 *cannot* be used to remedy ineffective assistance of postconviction counsel. (We have left open the question whether such ineffective assistance can establish a constitutional violation, see *Coleman* v. *Thompson*, 501 U. S. 722, 755 (1991).) But § 2255 cannot possibly be the means of relief.

For these reasons, I join the opinion of the Court only in part.

JUSTICE SOUTER, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, dissenting.

In *Custis* v. *United States*, 511 U. S. 485 (1994), we held that a federal defendant facing an enhanced sentence on the basis of prior state convictions under the Armed Career Criminal Act of 1984 (ACCA), 18 U. S. C. § 924(e), could not, with one exception, challenge the constitutionality of the underlying state convictions at his federal sentencing proceeding. *Custis* was thus a precursor of the case before us now; *Custis* is not, however, compelling authority for today's disposition. Although the Court's opinion in *Custis* struck me as portending more than it strictly held, a reading of the case free of portent was in fact the understanding of one Member of the *Custis* majority: "*Custis* presented a forum question. The issue was *where*, not *whether*, the defendant could attack

a prior conviction for constitutional infirmity." *Nichols* v. *United States,* 511 U. S. 738, 765 (1994) (GINSBURG, J., dissenting) (emphasis in original). The door in *Custis* remained open to an attack on the prior state convictions, through a state or federal habeas challenge to the underlying convictions themselves. See *Custis, supra,* at 497 (Custis "was still 'in custody' for purposes of his state convictions at the time of his federal sentencing under § 924(e)," and could thus "attack his state sentences in Maryland or through federal habeas review"). This case presents the distinct question of what happens when that door has been closed.

The Court's reasons for reading 28 U. S. C. § 2255 (1994 ed., Supp. V) as restrictively as it read the ACCA sentencing provisions have nothing to do either with the text of § 2255 or with any extension of rules governing habeas review of state convictions under 28 U. S. C. § 2254 (1994 ed. and Supp. V). The language of § 2255 providing a federal prisoner with the right to relief because a sentence "was imposed in violation of the Constitution or laws of the United States" is obviously broad enough to include a claim that a prior conviction used anew to mandate sentence enhancement under the ACCA was obtained unconstitutionally, so that the new sentence itself violates the terms of the ACCA or the Constitution.[1] Nor does the Court rest its exclusion of such claims

---

[1] The Government argues, citing *Custis* v. *United States,* 511 U. S. 485 (1994), that 28 U. S. C. § 2255 (1994 ed., Supp. V) does not provide a remedy here because "the Constitution is not violated when a conviction that is facially valid is used to enhance a sentence for committing another crime." Brief for United States 12. This misstates the holding of *Custis,* which merely held (with one exception discussed below) that neither the ACCA nor the Constitution provides a forum at the sentencing hearing for challenges to the underlying conviction. 511 U. S., at 487. The constitutional holding was necessarily limited to the statutory scheme considered. And, in any event, § 2255 provides an explicit remedy for a sentence that violates federal law, not solely the Constitution. Cf. *Hill* v. *United States,* 368 U. S. 424, 428 (1962) (describing types of fundamental errors that are

from § 2255 review on the theory that a § 2255 petitioner who challenges underlying state convictions should be required, like a § 2254 petitioner, to exhaust state remedies and to comply with state procedural rules. Cf. 28 U. S. C. §§ 2254(b)–(c) (1994 ed. and Supp. V); *Rose* v. *Lundy,* 455 U. S. 509 (1982); *Coleman* v. *Thompson,* 501 U. S. 722 (1991). It is not clear, after all, that such requirements, premised largely on comity concerns and the State's interest in the finality of its own judgments, see, *e. g., id.,* at 731–732, 750, should be imported into this context of a federal sentence imposed when a petitioner who has completed his state sentence seeks only to avoid a sentence enhancement under federal law. In any event, the Court does not purport to apply these specific requirements (which in the § 2254 setting can be waived by the State, see 28 U. S. C. § 2254(b)(3) (1994 ed., Supp. V); *Gray* v. *Netherland,* 518 U. S. 152, 165–166 (1996), and which are subject to explicit exceptions). Instead it imposes a flat ban on § 2255 relief (subject, maybe, to narrow exceptions).[2]

Having no textual basis or related precedent in habeas law, the Court rules out challenges to ACCA sentencing predicates under § 2255 on the same grounds invoked earlier to bar such challenges under the sentencing provisions of the

cognizable under § 2255). Neither the *Custis* Court nor today's Court takes the position that the ACCA properly applies, as a statutory matter, to underlying sentences that are in fact invalid. See *Custis, supra,* at 497; *ante,* at 382. The language of § 2255 invites a petitioner to establish such a statutory violation.

[2] The Court continues to leave the door open (but with no promises) to a motion to revise an ACCA sentence if a defendant has first obtained an order vacating the predicate conviction through a state collateral proceeding or federal habeas review of the state judgment under 28 U. S. C. § 2254 (1994 ed. and Supp. V). See *ante,* at 382; *Custis, supra,* at 497. The plurality adds the possibility of an exception to today's rule if a petitioner can show newly discovered evidence or legal disability during the period of state custody. See *ante,* at 383–384. These exceptions will not eclipse the rule.

ACCA itself: the ACCA ought to be easy to administer and state convictions ought to carry finality, *ante*, at 378–380. But whatever force these reasons might have if alternative avenues of challenge were open, they do not even come close to the horsepower needed to rule out the application of § 2255 when the choice is relief under § 2255 or no relief at all. Why should it be easy to subject a person to a higher sentencing range and commit him for nearly nine extra years (as here) when the prisoner has a colorable claim that the extended commitment rests on a conviction the Constitution would condemn? If the answer is the value of finality in state convictions, why is finality valuable when state law itself does not demand it, and why is finality a one-way street? Why should a prisoner like Daniels suddenly be barred from returning to challenge the validity of a conviction, when the Government is free to reach back to it to impose extended imprisonment under a sentence enhancement law unheard of at the time of the earlier convictions (1978 and 1981 in this case)? Daniels could not have been expected in 1978 to anticipate the federal enhancement statute enacted in 1984; and even if he had been blessed with statutory clairvoyance, the practice in 1978 would have told him he could challenge the convictions when and if the Government sought to rely on them under the future enhancement statute. The ACCA was enacted against the backdrop of a pervasive federal practice of entertaining constitutional challenges to prior convictions when used anew for sentence enhancement, a practice on which Congress threw no cold water when it enacted the ACCA. See *Custis*, 511 U. S., at 499–501 (SOUTER, J., dissenting). Indeed, even the Court seems to find something disquieting in the historical practice, as it shows by recognizing a textually untethered exception to its own rule, one allowing for collateral attacks on prior convictions if based on violations of the right to counsel under *Gideon* v. *Wainwright*, 372 U. S. 335 (1963). See *ante*, at 382. I sup-

pose I should not begrudge the Court's concession, but the *Gideon* exception, first announced in *Custis*, is inexplicable here. One might have argued in *Custis* that a *Gideon* violation was egregious enough to excuse the defendant's failure to resort to other forums still open; but there is no excuse for picking and choosing among constitutional violations here, when other forums are closed. The need to address *Gideon* is no reason to ignore *Moore* v. *Dempsey*, 261 U. S. 86 (1923), or *Mooney* v. *Holohan*, 294 U. S. 103 (1935) *(per curiam)*, or *Brown* v. *Mississippi*, 297 U. S. 278 (1936), or *Strickland* v. *Washington*, 466 U. S. 668 (1984), or *Miranda* v. *Arizona*, 384 U. S. 436 (1966), or *Brady* v. *Maryland*, 373 U. S. 83 (1963), or any other recognized violations of the Constitution.

None of this is to say that the Court is wrong to recognize that collateral review of old state convictions can be very cumbersome. See *ante*, at 379. But that is not the only practical consideration in the real world we confront (or ought to confront) here. A defendant under the ACCA has generally paid whatever penalty the old conviction entailed; he may well have forgone direct challenge because the penalty was not practically worth challenging, and may well have passed up collateral attack because he had no counsel to speak for him. But when faced with the ACCA's 15-year mandatory minimum the old conviction is suddenly well worth challenging and counsel may be available under 18 U. S. C. § 3006A(a)(2)(B). In denying him any right to attack convictions later when attacks are worth the trouble, the Court adopts a policy of promoting challenges earlier when they may not justify the effort and perhaps never will. That is a very odd incentive for a court to create, and the eccentricity is hardly softened by the likelihood that most defendants will not notice before it is too late.

Today's decision is devoid of support in either statutory language or congressional intention. I respectfully dissent.

JUSTICE BREYER, dissenting.

I believe that Congress intended courts to read the silences in federal sentencing statutes as permitting defendants to challenge the validity of an earlier sentence-enhancing conviction *at the time of sentencing.* See *United States* v. *Paleo*, 967 F. 2d 7, 11–13 (CA1 1992), implicitly overruled by *Custis* v. *United States*, 511 U. S. 485 (1994). That was the practice typically followed in the lower courts before *Custis.* See *id.*, at 498–499, and n. 2, 511 (SOUTER, J., dissenting). The courts now follow a comparable practice in respect to other sentence-enhancing factors. See, *e. g.*, *United States* v. *Dunnigan*, 507 U. S. 87, 95–97 (1993) (perjured testimony enhancement). And, given appropriate burden of proof rules, see, *e. g.*, *United States* v. *Gilbert*, 20 F. 3d 94, 100 (CA3 1994); *United States* v. *Wicks*, 995 F. 2d 964, 978 (CA10), cert. denied, 510 U. S. 982 (1993); *Paleo*, *supra*, at 13 (citing *United States* v. *Henry*, 933 F. 2d 553, 559 (CA7 1991), cert. denied, 503 U. S. 997 (1992); *United States* v. *Gallman*, 907 F. 2d 639, 643 (CA7 1990), cert. denied, 499 U. S. 908 (1991); and *United States* v. *Taylor*, 882 F. 2d 1018, 1031 (CA6 1989), cert. denied, 496 U. S. 907 (1990)), that practice need not prove unusually burdensome, see *Custis*, *supra*, at 511 (SOUTER, J., dissenting).

Having rejected that procedural approach in *Custis*, *supra*, at 496–497, the Court now must face the alternative— a later challenge to the earlier convictions in a collateral proceeding that attacks the present conviction or sentence. To resolve that challenge the plurality has devised a broad rule immunizing the earlier conviction with a possible exception for "rare" circumstances. See *ante*, at 383. The rule may well prove unduly "restrictiv[e]," *ante*, at 388 (SOUTER, J., dissenting). Or, through exceptions, it may well bring about additional delay, still greater litigation complexity, and (insofar as the plurality ties Congress' hands by resting its exception upon constitutional grounds) legal inflexibility. And, given the restrictions *Custis* placed on sentencing courts, the

inclination to grant a 28 U. S. C. § 2255 (1994 ed., Supp. V) hearing in the rare circumstances hypothesized by the majority is subject to JUSTICE SCALIA's criticism that § 2255 may be an inappropriate forum for such a challenge. See *ante,* at 387 (opinion concurring in part).

The legal problem lies at the source. While we do not often overturn a recently decided case, in this instance the Court's earlier decision will lead to ever-increasing complexity, for it blocks the simpler procedural approach that Congress intended.

Consequently, I believe this is one of those rare instances in which the Court should reconsider an earlier case, namely, *Custis,* and adopt the dissenters' views. For that reason, I dissent.